18-2404-cv
The Estate of Stanley Kauffmann v. Rochester Institute of Technology

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2018

Argued:  May 7, 2019          Decided: August 1, 2019

Docket No. 18-2404-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE ESTATE OF STANLEY KAUFFMANN,

Plaintiff-Appellant,

v.

ROCHESTER INSTITUTE OF TECHNOLOGY,

Defendant-Third-Party-Plaintiff-Appellee,

v.

ROBERT J. CARDULLO,

Third-Party-Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before:  NEWMAN, JACOBS, and DRONEY, Circuit Judges.

Appeal from the August 7, 2018, judgment of the District Court for the Western District of New York (Charles J. Siragusa, District Judge), granting summary judgment in favor of Rochester Institute of Technology and denying the motion by the Estate of Stanley

Kauffmann for partial summary judgment. Judgment reversed, and case remanded for further proceedings.

Kenneth P. Norwick, Norwick & Schad, New York, NY for Plaintiff-Appellant The Estate of Stanley Kauffmann.

Mary P. Moore, Bond, Schoeneck & King, PLLC, Rochester, NY (Joseph S. Nacca, Bond, Schoeneck & King, PLLC, Rochester, NY; Jeremy P. Oczek, Bond, Schoeneck & King, PLLC, Buffalo, NY, *on the brief*) for Defendant-Appellee Rochester Institute of Technology.

(Andrew Grimm, Digital Justice Foundation, Omaha, NE, Gregory Keenan, Digital Justice Foundation, Floral Park, NY for *amicus curiae* Digital Justice Foundation, Inc., in support of neither party and reversal.)

JON O. NEWMAN, Circuit Judge:

This appeal concerns the ownership of copyrights in 44 articles written by the film critic Stanley Kauffmann, which first appeared in *The New Republic* magazine ("*TNR*" or "the magazine") and have now been republished in an anthology of Kauffmann's reviews. The issue is whether each article is a "work made for hire" within the meaning of the definition section of the Copyright Act of 1976, 17 U.S.C. § 101. Because the parties in this litigation, a purported licensee and Kauffmann's estate, agree that Kauffman was not an employee of the

magazine, the more precise issue is whether a letter agreement, signed by Kauffmann and the magazine's literary editor five years after the year in which the articles were written, satisfies the definition's alternate criterion that "the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." *Id.*

This issue arises on an appeal by Kauffmann's estate ("the Estate"), Kauffmann's successor in interest, from the August 7, 2018, judgment of the Western District of New York (Charles J. Siragusa, District Judge), dismissing, on motion for summary judgment, the Estate's complaint against the Rochester Institute of Technology ("RIT") for copyright infringement based on RIT's publication of an anthology of Kauffmann's articles. RIT, asserting the defense that the Estate does not own the copyrights, contends that Kauffmann's articles were works for hire and that *TNR* for that reason was the "author" of the works, 17 U.S.C. § 201(b), and therefore had "[o]wnership" of the copyrights in them, *id.* § 201(a), absent any transfer.

We conclude that Kauffmann's articles were not works for hire because the letter agreement was signed long after the works were created, and no special circumstances even arguably warrant applying the written agreement. Accordingly, we reverse the judgment of the District Court and remand for further proceedings.

Background

Over the course of 55 years, Stanley Kauffmann, who, the parties to this appeal agree, was never employed by *TNR*, contributed numerous film reviews and other articles to the magazine. During that time, Kauffmann and *TNR* took

3

some actions consistent with an understanding that Kauffmann was the author of, and owned the copyrights in, his articles. For example, Kauffmann granted many third-party licenses to republish his *TNR* articles without objection from *TNR*. However, Kauffmann and *TNR* took other actions consistent with an understanding that *TNR* was the author and original owner of the copyrights. For example, *TNR* transferred to Kauffmann the copyrights in all of his articles appearing in *TNR* in 1978 and 1979, and Kauffmann at least once solicited permission from *TNR* to reprint his *TNR* film reviews in an anthology.

With one important exception, Kauffmann and *TNR* never formalized any understanding about whether Kauffmann's articles were "works made for hire." The exception is a 2004 letter agreement from *TNR* to Kauffmann ("the 2004 Agreement"), which is critical to this appeal. It provided in relevant part: "Our agreement with you has always been an oral understanding . . . . We have . . . always understood in doing business with you that, in light of our regular monthly compensation arrangement with you, all articles you have written for *The New Republic* have been 'works made for hire,' as that term is defined under the US Copyright laws." Letter from Leon Wieseltier to Stanley Kauffmann (Mar. 22, 2004). The agreement was signed on behalf of *TNR* by Wieseltier, then *TNR*'s literary editor, and shows a check mark on the line marked "Agreed:" above Kauffmann's signature.

After Kauffmann's death in 2013, RIT published an anthology of Kauffmann's film reviews including 44 that had originally been published in *TNR* in 1999 ("the articles" or "the works"). The anthology, titled *The Millennial Critic: Stanley Kauffmann on Film: 1999-2009*, was edited by third-party defendant Robert

4

J. "Bert" Cardullo. He is not a party to this appeal. Cardullo, a serial plagiarist of writings by Kauffmann and others, misrepresented to RIT that Kauffmann's will had granted him sole authority to prepare an anthology of Kauffmann's film reviews. He went so far as to forge a letter purporting to be from counsel for the Estate. In emails to counsel in this litigation, Cardullo admitted that he was "fully guilty of all the charges against [him] and that RIT Press was duped by [him] in this affair."[1] Email from Robert Cardullo to Jeremy Oczek (Mar. 3, 2017).

Kauffmann's estate is the successor owner of Kauffmann's copyrights and the appellant in this appeal. In 2015, the Estate discovered the anthology and sued RIT for copyright infringement. Relying on the 2004 Agreement, which was unearthed from *TNR*'s files during discovery, RIT sought summary judgment. It contended that the Estate did not own the copyrights because Kauffmann had created the articles in the anthology as works for hire and *TNR*, not Kauffmann, was therefore the "author" of the articles. The Estate cross-moved for partial summary judgment on the issue of liability.

The District Court granted RIT's motion for summary judgment and denied the Estate's cross-motion, ruling that the 2004 Agreement "unambiguous[ly]" "memorialize[d] in writing a preexisting oral contract, evidently dating back to when Kauffmann started writing for *The New Republic* in 1958," that Kauffmann's contributions to the magazine – including the 44 articles at issue in the litigation – were created as works for hire. *See Estate of Kauffmann v. Rochester Institute of*

---

[1] Cardullo, who was served in Finland, never appeared in this action, and the District Court entered a default judgment against him, making him liable to RIT for attorney's fees of $178,096.64.

*Technology*, No. 17-CV-6061, 2018 WL 3731445, at *3 (W.D.N.Y. Aug. 6, 2018). In the District Court's view, Kauffmann never owned copyrights in the articles and therefore the Estate, his successor in interest, could not maintain an infringement action based upon their inclusion in RIT's anthology.

Discussion

"To prove a claim of copyright infringement, a plaintiff must show . . . ownership of a valid copyright . . . ." *Urbont v. Sony Music Entertainment*, 831 F.3d 80, 88 (2d Cir. 2016). The owner of a copyright in a work is the "author" of the work, 17 U.S.C. § 201(a), absent any transfer. The author of the work is the creator of the work, unless it is a "work made for hire." *Id*. § 201(b). Section 201(b) provides:

> "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."

*Id*. A "work made for hire" is either:

> "(1) a work prepared by an employee within the scope of his or her employment; or
>
> "(2) a work specially ordered or commissioned for use as a contribution to a collective work . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."

*Id*. § 101(2).

Because the parties to this litigation agree that Kauffmann was not an employee of *TNR* and that the articles were ordered for use in a collective work,

whether Kauffmann was, and whether Kauffmann's estate now is, the owner of copyrights in the 44 articles at issue in this litigation turns on the legal effect of the 2004 Agreement.

The 2004 Agreement was executed five years after the year in which the 44 articles were written. Although the Seventh and Ninth Circuits have ruled that an agreement sufficient to establish a work as a "work for hire" must be executed *before* creation of the work, *see Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 412-13 (7th Cir. 1992); *Gladwell Government Services, Inc. v. County of Marin*, 265 F. App'x 624, 626 (9th Cir. 2008),[2] our Circuit has ruled that in some circumstances a series of writings executed *after* creation of the works at issue can satisfy the writing requirement of section 101(2), *see Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 558-59 (2d Cir. 1995). Such writings, we said, must "confirm[] a prior agreement, either explicit or implicit, made before the creation of the work." *Id.* at 559.[3] That statement is best understood as qualified by the particular circumstances of the execution of the writings in that litigation.

*Playboy* concerned paintings that Patrick Nagel contributed to the well-known magazine. The relevant writings deemed to have created a work-for-hire relationship were either of two versions of legends stamped on the back of checks made out to Nagel as payment for paintings that were reproduced in the magazine. *See id.* at 552-53. Playboy issued a check for a particular painting after it had received the work from Nagel. *See Playboy Enterprises, Inc. v. Dumas*, 831 F.

---

[2] Two commentators agree. *See* 4 *Goldstein on Copyright* § 4.3.2.2 (3d ed. 2019); 2 *Patry on Copyright* § 5:49 (2019).

[3] One commentator agrees. See 1 *Nimmer on Copyright* § 5.03[B][2][b] (2019).

Supp. 295, 300 (S.D.N.Y. 1993). Both versions of the legends included the words "BY ENDORSEMENT, PAYEE: acknowledges payment in full for services rendered on a work-made-for-hire basis in connection with the work named on the face of this check." *Playboy*, 53 F.3d at 552-53.

As in the pending case, the parties in *Playboy* agreed that Nagel was not an employee of the magazine. *See* 53 F.3d at 558. In determining whether the legends sufficed to satisfy the writing requirement of section 101(2), Judge Oakes' opinion said that our Court agreed with the Seventh Circuit "that the writing requirement was created, in part, to make the ownership of intellectual property rights clear and definite." *Id*. at 559. The Supreme Court, he noted, had observed that "one of Congress's goals in creating the work-for-hire provisions of the 1976 Act was to 'ensur[e] predictability through advance planning.'" *Id*. (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 750 (1989). "Congress's goal of 'predictability'" he wrote, "would be thwarted if a hiring party and an independent contractor could enter into a work-for-hire agreement years after a work was created." *Id*.

Rejecting an absolute rule that the requisite writing always had to be executed before the work was created, he deemed "convincing" the argument that such a requirement could "itself create uncertainty." *Id*. Significantly, Judge Oakes indicated the sort of circumstance where a subsequent writing would be acceptable: "'unanimous intent among all concerned that the work for hire doctrine would apply, notwithstanding that some of the paperwork remained not fully executed until after creation of the subject work.'" *Id*. (quoting 1 *Nimmer* § 5.03[B][2][b] (1994)). Then, considering the specific circumstances before him, he

acknowledged that "[w]hile Nagel's endorsement of Playboy's first check bearing [one version of the legend] may not evidence [Nagel's] pre-creation consent to a work-for-hire relationship, Nagel's subsequent pre-creation consent to such a relationship may be inferred from his continued endorsements." *Id.* at 560.

In the pending case, the agreement alleged to satisfy the writing requirement was not executed until five years after the year in which the articles were written, and there are no circumstances even approaching the *Playboy* scenario of a series of writings executed by check endorsements right after payment for each work. It is not "'paperwork [that] remained not fully executed until after creation of the subject work.'" *Id.* at 559 (quoting 1 *Nimmer* § 5.03[B][2][b] (1994)). The 2004 Agreement does not satisfy the writing requirement of section 101(2).[4]

To give the 2004 Agreement the significance adopted by the District Court would risk endorsing a fiction of "two separate authors," specifically rejected in *Playboy*, 53 F.3d at 559, one during the five-year interval before the Agreement was executed and another thereafter. It would also render uncertain several aspects of the copyright in each article, such as its duration, renewal rights, and termination rights. *See* 17 U.S.C. §§ 203(a), 302(c), 304(a); *see also* 4 *Goldstein on Copyright* § 4.3.2.2.[5] None of these consequences is eliminated by the fact that the 2004 Agreement recites a prior oral understanding between *TNR* and Kauffmann.

---

[4] Because we conclude that the 2004 Agreement does not satisfy the section 101(2) writing requirement, we do not reach the issue, raised by amicus, of whether the District Court properly relied on the parol evidence rule to exclude extrinsic evidence of Kauffmann's and *TNR*'s pre-creation intent.

[5] In the four District Court decisions (all outside our Circuit) that have relied on *Playboy* to uphold work-for-hire agreements executed after creation of a work, an alleged work-for-hire

## Conclusion

Kauffmann was and remains the author of the 44 articles, and his Estate, as his successor, is the owner of the copyrights in them. The Estate is entitled to proceed on its suit for infringement.

The judgment of the District Court is reversed, and the case is remanded for further proceedings.

---

employer sued an alleged third-party infringer. *See Kid Stuff Marketing, Inc. v. Creative Consumer Concepts, Inc.*, 223 F. Supp. 3d 1168, 1180-81 (D. Kan. 2016); *Campinha-Bacote v. Rearden*, No. 3:10-CV-00139-JDR, 2011 WL 1343343, at *3 (D. Alaska Apr. 8, 2011); *Looney Ricks Kiss Architects, Inc. v. Bryan*, No. CIV.A. 07-572, 2010 WL 4068885, at *6 (W.D. La. Oct. 14, 2010); *TMTV, Corp. v. Mass Productions, Inc.*, 345 F. Supp. 2d 196, 206 (D.P.R. 2004), *aff'd on other grounds*, 645 F.3d at 469-70. The four District Courts all lacked the benefit of any claim of authorship or ownership by the creator of the work or, as in the pending case, the creator's successor in interest. Such a claim might well have persuaded those courts to adopt the limited reading of *Playboy* we apply here. And in the course of the litigation of all four cases, the creator of the work at issue actually supported the claim of work for hire.